IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

G. G. MARCK AND ASSOCIATES, INC.,

               Plaintiff,              Case No. 3:05 CV 7391

      -vs-

JAMES PENG, et al.,                  <u>MEMORANDUM   OPINION
AND   ORDER</u>

               Defendant.

KATZ, J.

This case is presently on remand from a February 5, 2009 decision of the United States Court of Appeals for the Sixth Circuit. See *G.G. Marck and Assoc., Inc. v. Peng*, 309 Fed. Appx. 928 (6th Cir. 2009).  In that opinion, the Sixth Circuit vacated this Court's January 24, 2006 order reopening the case, all judgments dependent on that reopening, and this Court's award of contempt sanctions against Peng, remanding the case to the Court to make certain additional findings, including "whether– and, if so, how–[Marck's] evidence establishes extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief." *Id*. at 935 (quoting *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 470 (6th Cir.2007)).

Upon remand, on March 31, 2009, this Court ordered that the parties submit supplemental briefing on the issues raised by the Sixth Circuit decision.  For the reasons that follow, the Court finds that Marck has shown "extraordinary or exceptional circumstances" that warrant setting aside the parties' 2005 settlement agreement under Fed. R. Civ. Pro. 60(b)(6).

**I. Background**

*A. Proceedings in the District Court*

The Sixth Circuit's opinion set forth the history of this case as follows:

Marck originally filed suit in Ohio court in September 2005, alleging claims of unfair competition, civil conspiracy, deceptive trade practices, trademark infringement, and tortious interference with business relations. Peng and his companies removed to federal court. In October 2005, the district court held a hearing on whether it should issue a temporary restraining order against the Peng companies. Midway through the second day of the hearing, the parties reached an agreement to settle the entire case and placed it on the record.

Both sides' attorneys participated in putting the various terms of the settlement on the record: a "voluntary [permanent] injunction will be agreed to by the defendants," the parties "agreed to a three-year monitoring program through an accounting or CPA firm" with costs shared, under the injunction Peng would "agree to comply with the United States laws with [regard] to Customs importation and transportation," the parties "agreed to mutual full and complete releases between the parties and additionally Anna Peng" (the wife of defendant Peng), the case would be dismissed with prejudice, and the district court would "retain jurisdiction to enforce the terms and conditions of the injunction until its dissolution."

The next day, the district court entered an order noting that the case had settled and dismissing it without prejudice. The court noted that the order could be superseded by a later order, and that the court retained jurisdiction both to interpret and enforce the settlement agreement and to vacate the order and reopen the case "upon cause shown that the settlement has not been completed and further litigation is necessary."

About a month later, Marck filed a motion to enforce the settlement agreement. Marck alleged that Peng refused to complete the settlement, and asked the district court to enforce the agreement entered into at the October hearing. Peng did not file a response opposing this motion, possibly because he was busy changing attorneys.

The district court held a hearing on the motion to enforce in December 2005. Late in the proceedings, after an off-the-record discussion, Marck's attorney made the first on-the-record suggestion that the court enter a stipulated permanent injunction, but defer resolution of any "settlement agreement and mutual release" for a later hearing. The court indicated that it agreed with this proposal, or at least that it wanted immediate resolution of the injunction issue and that it would put off issues relating to a separate release. Peng agreed to sign the stipulated injunction, and the court indicated that it would set a further hearing on the separate release. The court further indicated that it hoped the parties would reach agreement on the release before another hearing was necessary.

The district court entered the Stipulated Permanent Injunction, signed by the parties, on December 8, 2005. In the "Findings" section, the injunction provided that "[t]o effect settlement of the matters alleged in the Verified Complaint without a trial on the merits or any further judicial proceedings, Defendants agree and consent to the entry of this Stipulated Final Order for

2

Permanent Injunction." It further stated that Defendants agree to accurately designate the country of origin on its [sic] products and/or packaging imported into the United States." Under the "Prohibited Business Activities" section, the order enjoined Peng from "[s]ubmitting falsified or inaccurate documentation to U.S. Customs," and from "[s]hipping products" in the U.S. in excess of legal weight limits. The injunction also provided for monitoring by a mutually acceptable third party. Marck had provided the first draft of the injunction, and most of its language remains in the final draft.

In January 2006, Marck filed a motion to reopen the case. Marck alleged that Peng was "unwilling to execute the Settlement Agreement with Mrs. Peng as a signatory." The next day the district court entered an order granting that motion, as well as an unrelated discovery motion. This order is rather unclear. Most of the order dealt with the discovery motion, but in passing the court stated that "Plaintiff has filed a motion to reopen ... and requested a hearing on the motion to enforce, which will be granted." The court later characterized the order as granting the motion to reopen. [. . .]

After the district court reopened the case, Marck filed a motion for partial summary judgment "on its claims of deceptive trade practices, unfair competition and civil conspiracy." The motion did not explain what Marck wanted the court to do with its claims for trademark infringement or tortious interference. The district court granted partial summary judgment in November 2006.

The district court's order stated findings that: (1) Peng violated O.R.C. § 4615.02 by not labeling his products "Made in China," (2) Peng violated 15 U.S.C. § 1125(a)(1)(A) by not labeling his products "Made in China," and (3) Peng committed civil conspiracy in violation of Ohio common law by not labeling the country of origin, by shipping overweight containers, and by misdeclaring the value of imports to U.S. Customs.

The district court held a nonjury "hearing/trial" on damages for five days in March and April of 2007. The court awarded Marck $1,150,000 in damages for the claims on which it had found against Peng during the summary judgment phase. As a sanction for violations of the stipulated permanent injunction, the district court ordered Peng "to pay the Plaintiff's legal fees." The court found that as of the damages hearing, the fees were $340,786; a motion for an additional $215,530.44 is still pending in the district court. The court characterized the award as "curative sanctions of the Court for willful violation of a Court order."
However, the district court did not make specific findings of facts and conclusions of law with respect to the sanctions. The court merely stated that "[t]he evidence presented by Plaintiff clearly demonstrates that Defendants willfully violated the terms of the Permanent Injunction. The Court will impose sanctions as a cure [therefor]."

*G.G. Marck and Associates, Inc. v. Peng,* 309 Fed.Appx. 928, 930-931 (6th Cir. 2009).  Peng

appealed to the Sixth Circuit, and Marck cross-appealed the Court's damages ruling.

3

## *B. The Sixth Circuit Opinion*

In a decision handed down on February 5, 2009, the Sixth Circuit "vacate[d] the orders of the district court insofar as they awarded sanctions against Peng, awarded Marck summary judgment and damages, and reopened the case" and remanded for further proceedings. *G.G. Marck*, 309 Fed. Appx. 928, 938.  In doing so, however, the Sixth Circuit "express[ed] no opinion on the propriety of the summary judgment under federal and Ohio law, the propriety of the subsequent damages award, and the merits of Marck's cross-appeal." *Id*.

The central holding of the Sixth Circuit's opinion is quite clear. The Sixth Circuit noted that, to vacate a settlement agreement, a district court must "find facts sufficient to justify setting aside the settlement, and that such a setting aside normally would require 'extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief.'" *G.G. Marck and Assoc., Inc. v. Peng*, 309 Fed. Appx. 928, 935 (6th Cir. 2009) (quoting *Ford Motor Co. v. Mustangs Unlimited, Inc*., 487 F.3d 465, 470 (6th Cir. 2007).  Thus, this Court's reopening of the case without finding facts showing "extraordinary or exceptional circumstances" was not proper. Moreover, the Court could not, in any event, have reopened the case under Rule 60(b)(6) "without vacating the stipulated permanent injunction, because that injunction was entered pursuant to the settlement agreement." *Id*. at 935.  It was for these reasons that the Sixth Circuit was not able to "ascertain a proper legal basis on which the district court could rest its actions" in ordering the case reopened but leaving the stipulated permanent injunction intact, *id*. at 933, and thus "vacate[d] the reopening of the case and all judgments dependent on that reopening." *Id*. at 935.

The Sixth Circuit's instructions to this Court on how to proceed on remand are less clear, however. In its opinion, the Sixth Circuit directed this Court as follows:

> On remand, the district court must, after making appropriate findings of fact and conclusions of law, decide whether the settlement agreement is encompassed in the stipulated permanent injunction or if one of the parties has breached a material term of the settlement agreement. If the court concludes that the stipulated permanent injunction settled the case, the court should proceed to enforce that injunction, but deny all relief based on the underlying claims. On the other hand, if the court finds that the stipulated permanent injunction did not resolve the requirement of an additional release, the court should either require compliance with the settlement agreement (the preferred course) or vacate the injunction.

*G.G. Marck,* 309 Fed. Appx. 928, 935. Though the Sixth Circuit's opinion contained a discussion suggesting that the stipulated permanent injunction indeed settled the case, see *id*. at 933-934, it also noted contrary indications in the record.  Recognizing that deference is afforded "to a district court's interpretation of a consent decree where that court was involved in creating the decree," *id*. at 935, the Sixth Circuit expressly left to this Court "in the first instance" to determine whether the stipulated permanent injunction "encompassed the entirety of the essential terms of the settlement agreement." *Id*.

Moreover, the Sixth Circuit did not foreclose the possibility that Marck might be able to make a showing under Rule 60(b) sufficient to warrant reopening the case; indeed, the Sixth Circuit's discussion expressly contemplated this scenario, and cautioned the Court that, if the case is reopened, the Court must vacate the stipulated injunction. *G.G. Marck,* 309 Fed. Appx. 928, 935.

In this light, the most straightforward reading of the Sixth Circuit's instructions is that the Court should first proceed to determine what the settlement agreement actually consisted of (i.e., whether the parties' agreement was fully encompassed in the stipulated permanent injunction), and then proceed to consider whether one of the parties has materially breached the settlement agreement and, if so, what remedy to impose.

5

**II. Discussion**

*A. The Settlement Agreement*

As to the first question, this Court finds that the stipulated permanent injunction did not encompass the entirety of the parties' settlement agreement.  It is clear that the parties did not intend the stipulated permanent injunction of December 2005 to supersede the earlier agreement that the parties had entered into in October 2005.  Rather, the stipulated permanent injunction was understood by the parties (and the Court) at the time as an effectuation of only one part of that earlier settlement agreement.

As the Sixth Circuit noted, "[t]he stipulated permanent injunction is a form of consent judgment, and the 'interpretation of a consent decree or judgment is a question of contract interpretation.'" *G.G. Marck,* 309 Fed. Appx. 928, 934 (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir.1998)). Thus, "[a] consent judgment is treated as a contract formed and interpreted under the law of the state in which it was formed." *G.G. Marck* at 934. "The court's task in interpreting a consent decree is to ascertain the intent of the parties at the time of settlement," *National Ecological Foundation v. Alexander*, 496 F.3d 466, 477-78 (6th Cir.2007), and, because a consent decree represents a bargain between adverse parties, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). The district court's interpretation of a consent decree is given deference, for "[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it." *Brown v. Neeb*, 644 F.2d 551, 558 n. 12 (6th Cir. 1981).

6

Under Ohio law, parol evidence may be admissible "as it bears on the threshold question of whether the written instrument is ... an 'integrated' agreement." *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 891 (6th Cir.1996).  Moreover,

> A contract is 'fully integrated' if the written language, when reviewed within the four corners of the contract, expresses the intentions of the parties. If a party is able to show some evidence that a contract is not a complete integration of the issues covered by the contract, this evidence should be presented to a fact finder to determine whether the contract was intended to be a complete integration of the agreement.

*Brantley Venture Partners II, L.P. v. Dauphin Deposit Bank and Trust Co.*, 7 F.Supp.2d 936, 941 (N.D.Ohio1998).  But "[e]ven where a contract is not fully integrated, parol evidence cannot be admitted if its effect will be to vary or contradict any matter that is specifically covered by the written terms of the contract." *Construction Interior Systems, Inc. v. Marriott Family Restaurants, Inc.* 984 F.2d 749, 754 (6th Cir. 1993); cf. *Besser v. Buckeye Pipe Line Co.*, 57 Ohio App. 341, 343-344 (1937) ("[A]  verbal agreement could not of course modify the terms of the written agreement. But a prior or contemporaneous oral understanding may always be shown when such pertain to matters that induced its making or will disclose the understanding of the contracting parties of its terms at the time of its execution.").

The parties agreed to a settlement of this case in October 2005, and they placed the terms of that settlement on the record on October 19, 2005.  Those terms were as follows: a permanent injunction, to stay in effect for three years, was to be agreed to by the parties, and it would include a proviso that the defendants agree to comply with the United States laws with regard to customs importation and transportation; to enforce compliance with the permanent injunction, the defendants were to be subject to a three-year monitoring program through an accounting firm; and

the parties and Anna Peng would sign mutual and complete releases. (Doc. 16 at 2-3). Pursuant to

this agreement, the case was marked "settled and dismissed with prejudice" on October 20, 2005.

The Court's order dismissing the case contained the following language:

> Any subsequent order setting forth different terms and conditions relative to the
> settlement and dismissal of the within action shall supersede the within order. The
> Court retains jurisdiction to vacate this Order and to reopen the action upon cause
> shown that the settlement has not been completed and further litigation is
> necessary. Alternatively, the Court retains jurisdiction to interpret and/or enforce
> the settlement agreement reached between the parties.

(Doc. 11).  There can be no doubt that the terms of the October 19 settlement constituted a binding

agreement between the parties. See *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th

Cir.2001) ("When parties have agreed on the essential terms of a settlement, and all that remains is

to memorialize the agreement in writing, the parties are bound by the terms of the oral

agreement.").

On November 22, 2005, Marck filed a "Motion to Enforce Settlement Agreement," and on

December 7, 2005, the Court held a hearing on this motion.  During the course of this hearing, the

parties reached agreement as to the stipulated permanent injunction. (Doc. 42 at 42).  After they

had reached agreement, but prior to entry of the injunction order, the parties addressed the Court

on the record.  Marck's counsel, Daniel Ellis, noted that the parties "have an agreement on the

stipulation for a permanent injunction, but we do not have an agreement on a settlement agreement

and mutual release of all claims." He requested that the Court "enter the permanent injunction and

order that is agreed to and set this settlement agreement and mutual release for a hearing in 30

days, given the holidays. And we can come back and address the issue of a settlement agreement

and mutual release at that time." *Id*.

8

Peng's counsel, David Fink, then addressed the Court. He began by noting that "there are

two components to the resolution of the case: the proposed stipulated final order and the

agreement between the parties along with the wife of Mr. Peng, who is not a party to this case."

He continued,

> The goal here was to resolve this case; first to find agreement with the– with a
> stipulated order and then the agreement. They are inextricably combined; there is
> no separation between the two. The goal was to end the case. We have not ended
> the case.

Therefore, at the time of he agreed to the permanent injunction, Peng's counsel also believed that

the parties' agreement to the stipulated injunction did not "end the case."  Rather, Peng's counsel,

like Marck's counsel, assumed that issues related to the release remained to be resolved, and that

the stipulated injunction therefore did not encompass the entirety of the parties' settlement

agreement.

This understanding of the role of the permanent injunction was also confirmed, on the

record, by the Court. At the hearing, after the parties had agreed to the stipulated permanent

injunction, the Court addressed the parties as follows:

> Clearly, we are here for a motion to enforce a settlement. A part of that settlement
> is an order [for a stipulated permanent injunction]. If I issue the order, then the
> motion will in effect have been granted, at least in part, and *I have left for another
> day the issue of the settlement agreement*. What Mr. Ellis has left open is the
> parties agree to this order and hold for 30 days the issue of the settlement
> agreement, thus obviating the necessity of this Court granting or at least
> considering granting the motion to enter an order pursuant to the settlement reached
> in open court. Now, that's what I have before me. Would you disagree that that's
> where we are, Mr. Fink?

(Emphasis added). Fink responded, "I think that you have accurately stated what has happened

and where we are."  Furthermore, at the conclusion of the hearing, as the parties were signing the

9

stipulated injunction order, the Court stated as follows: "The Court will within– at a time between now and the 15th of January, *set the matter for further hearing on the issue of the settlement agreement and release*." (Emphasis added).  Peng's counsel did not, at that time, object that further hearing on the settlement agreement and release was unnecessary because the stipulated injunction had entirely resolved the case.

From the record of the December 7 hearing at which the parties agreed to stipulated permanent the injunction, then, it is abundantly clear that neither the parties nor the Court understood the injunction as "having resolved the entire case"; that is, as a fully-integrated settlement agreement.  Indeed, Peng's argument to the contrary appears disingenuous in light of his counsel's representations to the Court during the December 7 hearing.  If Peng truly believed that the stipulated injunction resolved the entire case, thus obviating the need for further proceedings, his counsel should have so informed the Court at the December 7 hearing.  While it is true that "parties have purposes, generally opposed to each other," and that a consent decree "embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve," *United States v. Armour & Co.*, 402 U.S. 673, 681-682 (1971), the parties have an obligation to be honest and forthright in their dealings with each other and with the Court.  The type of free-wheeling adversarial bargaining envisioned by the *Armour* Court is scarcely possible if the parties are permitted to willfully deceive each other (and the Court) as to their intentions: that is a recipe for costly and protracted litigation, not amicable and efficient settlement. See *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.1976) ("Public policy strongly favors settlement of disputes without litigation.").

Thus, Peng should be estopped from now asserting that the stipulated permanent injunction resolved the case entirely, when he had implicitly represented, before this Court, that it did not. This Court sought to take an active role in ensuring that the parties' October 2005 settlement agreement was properly implemented.  Allowing Peng to now argue that he, in effect, concealed his intentions from this Court would be to slight the public interest in encouraging settlement of litigation, as well as the important role of federal district courts in facilitating and overseeing such settlement. See *G.G. Marck*, 309 Fed. Appx. 928, 935 ("A district court should normally seek to enforce a settlement"); *Aro Corp.*, 531 F.2d 1368, 1372 ("Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out.").

In any event, the clear understanding of the parties at the December 7 hearing that the stipulated permanent injunction did not encompass the entirety of the parties' settlement agreement is not contradicted by the language of the Permanent Injunction itself.  The argument that the Permanent Injunction was intended to represent a final resolution of the case hinges on the following provision of the Injunction, labeled "Finding 5": "To effect a settlement of the matters alleged in the Verified Complaint without a trial on the merits or any further judicial proceedings, Defendants agree and consent to entry of this Stipulated Final Order for Permanent Injunction." Peng urges this Court to read this, in conjunction with the Permanent injunction's silence as to a separate release or a broader settlement agreement, as providing, in effect, that the stipulated permanent injunction represents the parties' complete and final agreement, superseding all prior understandings and agreements relating to the suit.  But the Permanent Injunction says none of this expressly: taken at face value, Finding 5 merely provides an (accurate) explanation as to why the

11

parties agreed to the injunction.  The Permanent Injunction nowhere states that it is intended as the parties' complete and final agreement as to the litigation; it nowhere states that it supersedes all of the terms of the October 19 settlement agreement; and it nowhere states that it is intended to obviate any need for a separate release of claims.  Within its four corners, then, the Permanent Injunction is silent as to whether it supersedes the October 19 settlement agreement and silent as to all issues involving the release.

In context, then, the Permanent Injunction is most naturally read as effectuating that portion of the October 19 settlement agreement in which the parties agreed to enter into a stipulated permanent injunction.  With the case settled on the basis of an agreement expressly providing that the parties would, among other things, enter into a stipulated permanent injunction, it was quite reasonable for the parties and the Court to understand the subsequent issuance of such an injunction as implementing a part of the earlier agreement, instead of impliedly superseding it. This is especially so when it is recalled that the Permanent Injunction was agreed to during a hearing on a motion to *enforce* the October 19 settlement agreement.

Therefore, this Court finds that the parties' settlement was not fully encompassed in the stipulated permanent injunction.  Because the stipulated permanent injunction did not resolve the requirement of an additional release of claims from Anna Peng (an express term of the October 19 settlement agreement), the Court finds that the Defendants breached a material term of the settlement in not obtaining the release.[1]

---

[1]

In its opinion, the Sixth Circuit expressed confusion about why the requirement that Anna Peng sign a  release of claims "was so important." *G.G. Marck*, 309 Fed. Appx. 928, 933 n. 1. This Court finds, however, that Marck has proffered an adequate explanation as to why it considered the release an essential part of the settlement agreement: Marck feared that the Defendants would

***B. Rule 60(b)(6)***

Having found that the stipulated permanent injunction did not supersede the requirement of an additional release, this Court must next consider whether "to require compliance with the settlement agreement" or proceed to "vacate the injunction." *G.G. Marck*, 309 Fed. Appx. 928, 935.  Marck urges the Court to reopen the case pursuant to Rule 60(b)(6), arguing that "extraordinary or exceptional circumstances" warrant the reopening of this case "in the interests of justice."

Fed. R. Civ. P. 60(b) sets forth the grounds on which a party may obtain relief from a judgment. It provides, in relevant part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

In interpreting Rule 60(b), the Sixth Circuit has held that "Courts . . . must apply subsection (b)(6) only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present.  The 'something more' . . . must include unusual and extreme situations where principles of equity *mandate* relief." *Ford Motor Co. v.*

------

be able to circumvent their obligations under an injunction by creating corporate enterprises under her name, and the Court would not otherwise be able to establish personal jurisdiction over Ms. Peng.

13

*Mustangs Unlimited*, 487 F.3d. 465, 468 (6th Cir. 2007) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990)) (emphasis in original).  In *Mustangs Unlimited*, the Sixth Circuit confirmed that "a breach of a settlement agreement does not, without more, constitute an exceptional or extraordinary circumstance warranting relief under Rule 60(b)(6)." *Id.* at 469. Rather, "a district court has a duty to vacate a prior order of dismissal when required in the interests of justice, not whenever a settlement agreement has been breached."  *Harman v. Pauley*, 678 F.2d 479, 481 (4th Cir.1982).  This is because of the strong public policy in favor of enforcing settlements, and because "adequate relief" may be "available through a separate lawsuit for breach of the settlement agreement." 12 Moore's Federal Practice § 60.48[3][d] (3d ed. 2000).  Thus, "when considering a Rule 60(b)(6) motion, the trial judge should use his discretion to determine if the granting of such motion would further justice." *Harman*, 678 F.2d at 481.

In the instant case, Marck has mustered substantial evidence indicating that Peng has repudiated the settlement agreement between the parties.  The Defendants' conduct evinces an intention to repudiate the October 2005 settlement agreement, and the Permanent Injunction entered to effectuate it.  Against the backdrop of these violations, the Court has little confidence in the prospect of Peng's future compliance with the settlement agreement.

In November 2005 (before the issuance of the Permanent Injunction), Peng sent an email to his then-counsel, Theodore Rowen, that he would not agree to execute the October 2005 settlement agreement, because he could not agree to its terms, and would seek new counsel to represent him. (Doc. 318, Exh. B at 61-62).[2]  In his motion for leave to withdraw as Peng's

---

2

This Court has already held that Peng waived attorney-client privilege over these communications, because they were disclosed with Peng's approval by David Fink, his attorney at the time.  This

counsel, Rowen said that Peng "has refused to have executed any documents agreeing to the essential elements [of the settlement framework]," and that "Defendants will not agree to a permanent injunction in any form." (Doc. 15 at 2). Thus, from a very early point, Peng evinced an intention to repudiate the settlement agreement that he had reached with Marck.

In this light, evidence of Peng's subsequent violations of the October 2005 settlement agreement and the Permanent Injunction appear more troubling. In its opinion, the Sixth Circuit found that "clear and convincing" evidence adduced at the contempt hearing established that Peng violated the Permanent Injunction by not providing a copy of the injunction to Anna Peng. *G.G. Marck*, 309 Fed. Appx. 928, 936-937. This violation is not trivial, for Anna Peng was an officer of two of the corporate defendants in this case and had significant oversight responsibilities in both posts; her knowledge of the injunction's terms was essential to carrying out its dictates. Such conduct is certainly consistent with a general intention to resist compliance with the terms of the settlement agreement.

Further, this Court has found that Defendants' failure to obtain the release of Anna Peng constituted a material breach of the settlement agreement, as the Permanent Injunction was not intended to supersede this part of the October 2005 settlement agreement. Among the terms of the agreement that the parties placed on the record in open court, pursuant to which the case was to be settled and dismissed, was that "mutual full and complete releases" would be agreed to "between the parties and additionally Anna Peng." (Doc. 16 at 3). Nonetheless, in December 2005, without substantial justification, Peng's counsel informed Marck that Anna Peng would not agree to any

---

waiver applies to all of Peng's communications with counsel on the same subject matter (Doc. 46 at 3).

release of claims.  It was because of this refusal that Marck moved to reopen the case in January

2006. (Doc. 45).

Now, nearly four years later, Defendants represent that Anna Peng is willing to sign a

release of claims, if the Court finds that one is required.  But as Marck points out, the Defendants'

"earlier failure to complete this simple act forced the litigation in this case to proceed[,] costing

Marck hundreds of thousands of dollars in legal fees and expenses, among other things." (Doc.

318 at 13).  Under the terms of the settlement agreement, Marck was entitled to insist on

fulfillment of this term, regardless of whether, in hindsight, Marck's choice in doing so was wise.

It would not "further justice," then, to merely require that Anna Peng sign the release at this late

date: this would constitute a patently inadequate remedy in view of Defendants' serious and

persistent failures to abide by the terms of the agreement.

The bargain struck between the parties envisioned good-faith adherence to its terms, not

years of costly and litigious wrangling to force compliance.  At a certain point, repeated violations

of a settlement agreement cross over into a full-scale evisceration of the benefit of the bargain

struck between the parties.  Though the aggrieved party may be satisfied, in theory, in a separate

suit for damages for breach of the settlement agreement, it is often difficult to monetize the costs

of foregoing litigation on a meritorious suit without actually proceeding to try it.  This is

especially so in a suit like the present one, where one party insists, in a settlement agreement, on

various prophylactic measures to ensure the other's future compliance with an injunction.[3]

---

[3]

As noted *supra*, note 1, the real value to Marck in seeking Anna Peng's signature on a release of
claims was that such a release would curb attempts to evade the permanent injunction by resolving
any doubt as to this Court's jurisdiction over Anna Peng.

16

The record before the Court leaves serious doubt as to the prospects for future compliance with a settlement agreement and Permanent Injunction that require close cooperation between the parties in monitoring and enforcement activities.  The Court finds that Defendants' serious violations of the terms of the October 2005 settlement agreement amount to a repudiation of it. It is clear that the settlement agreement "is not, and has not been, a harmonious or effective resolution of the instant case." *Ford Motor Co. v. Mustangs Unlimited*, 2007 WL 2584502 at *8 (E.D. Mich. Sept. 7, 2007).  Therefore, "exceptional or extraordinary circumstances" exist "in the interests of justice" to set aside the 2005 settlement agreement under Rule 60(b)(6).

## III. Conclusion

For the reasons set forth above, the case is reopened pursuant to Fed. R. Civ. P. 60(b)(6). The Court's previous order marking the case as settled and dismissed with prejudice (Doc. 11) is hereby vacated, as is the Permanent Injunction (Doc. 35) entered pursuant to the parties' settlement agreement.

Partial summary judgment has already been granted in this case in favor of Plaintiff (Doc. 85), and, in its opinion, the Sixth Circuit did not intend to take issue with the reasoning underlying that ruling. *G.G. Marck*, 309 Fed. Appx. 928, 932, 938.  This Court's order and opinion granting partial summary judgment for Plaintiff is therefore reinstated.

This Court's previous damages ruling (Doc. 257), however, was overturned in large measure by the Sixth Circuit opinion, and must therefore be reconsidered.  See *G.G. Marck*, 309 Fed. Appx. at 938 ("The award of sanctions must therefore be vacated regardless of how the district court resolves the issue in Part III.").  The case will remain open so that the parties can

17

move for further relief, such as an award of damages on Marck's underlying claim pursuant to this

Court's previous summary judgment ruling.

IT IS SO ORDERED.

 s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE