IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

G.G. Marck & Associates, Inc.,

Plaintiff,

-vs-

James Peng, et al.,

Defendants.

Case Nos. 3:05 CV 7391
3:17 CV 2147

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

Pending before this Court is Plaintiff's Motion for Sanctions for Defendants' Breach of Settlement Agreement in the 2005 case (Doc. 531), and Defendants' Motion to Dismiss in the 2017 case (Doc. 9). Both Motions are opposed (2005 case, Doc. 533; 2017 case, Doc. 14). The 2005 and 2017 cases have been consolidated for pretrial purposes. This Order will address each Motion in turn.

**BACKGROUND**

The prolonged and tortured history of this case has been thoroughly explored elsewhere. *See, e.g.*, *G.G. Marck & Assocs., Inc. v. Peng* (*Marck III*), No. 13-3015 (6th Cir. Sept. 3, 2013); *G.G. Marck & Assocs., Inc. v. N. Am. Inv., Corp.* (*Marck II*), 465 F. App'x 515, 516–17 (6th Cir. 2012); *G.G. Marck & Assocs., Inc. v. Peng* (*Marck I*), 309 F. App'x 928, 929–31 (6th Cir. 2009). This Court briefly outlines the relevant facts below.

This action began in September 2005, when Marck filed a Complaint alleging Defendants committed various trademark and unfair competition violations (2005 case, Doc. 1-1 at 1–14; Doc. 1-2 at 22–23). The following month, the parties reached a settlement agreement and read its key points into the record (2005 case, Docs. 10, 16). But the dispute revived when the parties attempted

to memorialize their agreement in writing. The parties spent the next eight years litigating the terms and enforceability of their agreement.

In January 2013, the district court entered a Settlement Agreement and Mutual Release of All Claims (2005 case, Doc. 431-1) and Final Order for Permanent Injunction (2005 case, Doc. 432). Defendants' appeal of that Order concluded in September 2013. *Marck III*, No. 13-3015 (6th Cir. Sept. 3, 2013). The parties agree Defendants complied with the essential terms of the agreement by December 2, 2013 (2005 case, Doc. 531 at 2). With the completion of the final Special Master Report in June 2017, this dispute seemed finally near its end.

But in August 2017, Marck filed a Motion for Sanctions (2005 case, Doc. 531). Marck asks this Court to exercise its inherent powers and order Defendants to pay the entirety of Marck's attorney fees and costs incurred between December 15, 2005 and December 2, 2013 (*id.* at 2). During this period, Marck contends it was "forced" to incur additional legal expenses because of Defendants' "bad faith, . . . vexatious and wanton, and . . . oppressive" failure to timely comply with the essential terms of the settlement agreement (*id.*). Defendants deny materially beaching the agreement, or acting in bad faith. Further, Defendants argue that many of Marck's allegations of misconduct "have already been addressed and rejected by this Court or the Court of Appeals, and others have already been sanctioned and satisfied" (2005 case, Doc. 533 at 6). Thus, they cannot be raised again "under the different legal standard of 'inherent powers'" (*id.* at 7).

While the Motion for Sanctions was pending, Marck filed a new Complaint seeking damages for the alleged breach of the settlement agreement (2017 case, Doc. 1). Marck filed an Amended Complaint that same day (2017 case, Doc. 4). The facts alleged in the Amended Complaint are almost identical to those in the Motion for Sanctions. Marck also seeks the same relief: $ 1,073,172.97 in

attorney fees (*id.* at 14). Defendants moved to dismiss the Amended Complaint on three grounds: (1) Marck's claims are barred by the six-year statute of limitations for oral contracts; (2) Marck fails to state a plausible breach of contract claim because it fails to allege it performed its duties under the contract; and (3) Marck's claims are barred by res judicata (2017 case, Doc. 9 at 8–19).

## DISCUSSION

### A. Motion for Sanctions (2005 Case)

Under the American Rule, parties are ordinarily required to bear their own attorney fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–70 (1975). But "federal courts recognize several exceptions to this general rule." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1228–29 (6th Cir.1986). Here, Marck requests this Court order Defendants to pay over a million dollars in attorney fees under its "inherent powers" to levy sanctions.

This Court may sanction a party under its inherent powers if it finds that the party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct was tantamount to bad faith." *United States v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013) (citation omitted). These inherent powers "must be exercised with restraint and discretion." *Id.* (citation omitted). "Because [a] court's inherent power to impose sanctions is discretionary, [a] court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred." *Murray v. City of Columbus*, 534 F. App'x 479, 485 (6th Cir. 2013). And "[w]hile district courts are required to articulate a basis for awarding sanctions, nothing requires them to explain their reasons for not ordering sanctions." *Runfola & Assocs. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996).

Under certain circumstances, a party's attempt to repudiate or alter the terms of a settlement agreement may justify an award of attorney fees to the party who, as a result, must expend resources to enforce or defend the agreement. *E.g.*, *Jaynes v. Austin*, 20 F. App'x 421, 427 (6th Cir. 2001). But "bad faith cannot underlie every disagreement over the actual terms of a settlement" or its enforceability. *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1202 (S.D. Ohio 2013). *See also McCormick v. Brzezinski*, 2010 WL 1463176, at *6 (E.D. Mich. 2010). To justify an award of attorney fees under its inherent powers, this Court must find "something more," showing Defendants acted with an improper purpose. *See Jordan v. City of Detroit*, 595 F. App'x 486, 488–89 (6th Cir. 2014); *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011); *Tocci*, 967 F. Supp. 2d at 1202.

Marck fails to demonstrate that additional sanctions are warranted in this case.

First, the record casts doubt on Marck's assertion that "the Court of Appeals and this Court have already found . . . through clear and convincing evidence that Peng repeatedly breached the settlement agreement" (Doc. 531 at 16). In 2009, the district court found Defendants materially breached the settlement by failing to obtain Anna Peng's release (Doc. 331 at 12, 14–15). But the Sixth Circuit questioned this conclusion in both *Marck I* and *Marck II*. In *Marck I*, 309 F. App'x at 932 n.1, the Sixth Circuit observed:

> [T]he precise reason Marck sought the separate release is far from comprehensible. According to Marck, Ms. Peng's refusal to sign that separate mutual release caused the entire settlement to fail. But Marck does not explain why this term was so important . . . . Why her signature should be required on a separate mutual release of claims is thus a mystery, and makes it difficult to see why an entire settlement should fail merely because of its lack.

And although the Sixth Circuit "grant[ed] the assumption" that these failures were material breaches in part of its analysis in *Marck II*, 465 F. App'x at 517–18 (emphasis added), it then concluded:

4

> Marck offers no theory of harm arising from the breach. It is not as if Anna Peng obtained any benefit from her initial refusal to sign. . . . Anna Peng [is] a *peripheral player* at most in the resolution of this case. Nor is there any evidence that James Peng violated his *substantive obligations* under the settlement.

The Sixth Circuit ultimately vacated and remanded the district court's Order setting aside the settlement agreement. *Id.*

On this record, it is far from clear that Defendants' failure to timely provide Anna Peng's Release was a "material" breach of the parties settlement agreement, much less one justifying years of continued litigation or severe sanctions. *See Marion Family YMCA v. Hensel*, 178 Ohio App. 3d 140, 186 (Ohio Ct. App. 2008) (defining a material breach as "a failure to do something that is so *fundamental* to a contract that the failure to perform defeats the *essential* purpose of the contract") (emphasis added). And Defendants' failure to provide Anna Peng with the Permanent Injunction has already been sanctioned. *Marck II*, 465 F. App'x at 518–19.

Second, Marck makes several conclusory statements about whether Defendants bargained or litigated in good faith, but provides little to no evidence supporting these assertions. Marck's description of events also fails to account for *its own role* in causing the settlement to break down or prolonging this litigation, as recognized by the Sixth Circuit in *Marck I* and *Marck II*. For example, although Marck argues Defendants breached, repudiated, and rejected the settlement agreement in late 2005 by "refusing to comply with the settlement" and "refusing to negotiate the final written terms" of the agreement in good faith (Doc. 531 at 4–5, 15), the Sixth Circuit described this initial conduct as a mere "reluctance to sign the settlement." *Marck II*, 465 F. App'x at 518. It noted there was "another explanation" for Peng's conduct: "He disagreed with some provisions in the injunction and release because they had not been part of the original oral settlement agreement," but had later been added by Marck. *Id. See also* Doc. 41 at 8–12 ("Your Honor, the issue is not whether Mr. Peng and

the other defendants are willing to enter into a stipulated order. It's the things that were added that were never mentioned in court which are oppressive to him."). Considering the full context, Defendants' conduct in late 2005 does not seem "unreasonable" or "in bad faith." Many of Marck's allegations suffer from this same shortcoming.

Third, Marck places great weight on Defendants' alleged inconsistent, false, or frivolous arguments to the Sixth Circuit. In deciding *Marck I*, Marck argues the Sixth Circuit relied on Defendants' false statements that the stipulated injunction was the entire settlement agreement. But the Sixth Circuit had an opportunity to independently review the record, including the December 2005 settlement enforcement hearing transcript, before reaching a decision. It did not find Defendants' statements baseless or disingenuous. *See Marck I*, 309 F. App'x at 933–35. The appellate court is more than capable of detecting, and addressing, deceptive litigation tactics.

Marck also argues Defendants' appeal in *Marck III* was frivolous. Although the appeal was unsuccessful, "the 'mere fact that an action is without merit does not amount to bad faith.'" *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753 (6th Cir. 2010) (citation omitted). Marck did not argue Defendants' appeal was frivolous at the time, or ask the Sixth Circuit to impose sanctions. The Sixth Circuit also had the authority to sanction Defendants *sua sponte* under Federal Appellate Rule 38. It refrained from doing so. This Court declines to do so now, at this late juncture. *See Webster v. Sowders*, 846 F.2d 1032, 1040 (6th Cir. 1988) ("[T]he sanction statutes, the rules, and the case law provide for fairly clear separation between conduct on appeal sanctionable by the appellate court and conduct in the trial court sanctionable by the trial court.").

Further, Marck has previously requested sanctions for much of this same alleged misconduct under different legal theories -- all but $5,000 of those requests were found to be unsupported.

6

*Marck II*, 465 F. App'x at 518–19; *Marck I* , 309 F. App'x at 929, 936–38. This weighs strongly against this Court sanctioning the same conduct now, years after the fact, under its inherent powers -- whether or not Marck's new request is barred by the law-of-the-case doctrine as suggested by Defendants.

Finally, Marck fails to adequately explain why Defendants should be held responsible for *all* of Marck's attorney fees between December 15, 2005 and December 2, 2013, or how Defendants' alleged misconduct caused *all* of these expenditures. As the Sixth Circuit observed, "[t]o this day, it remains unclear why Marck and the district court could not have remedied the problem more directly, all while preserving the settlement." *Marck II*, 465 F. App'x at 518. An opposing parties' conduct might not always be relevant in assessing whether sanction are appropriate. But it is here, where the requested sanctions would be paid to the opposing party rather than the court. *See Thomas v. Schwab*, 2012 WL 6553773, at *1 (E.D. Mich. 2012) ("Courts have refused to invoke their inherent authority to impose sanctions where the party requesting sanctions has unclean hands."). Under the circumstances, this Court finds the requested sanctions unwarranted and inequitable. Any misconduct by Defendants has been adequately addressed by previous sanctions awards. *See Marck I*, 309 F. App'x at 938 ("While some sanction would have been appropriate for this violation, awarding Marck all of its attorney fees for the entire case cannot stand.").

In short, the unique circumstances in this case distinguish it from the typical request for sanctions following a breach of a settlement agreement or an attempt to enforce a settlement agreement. Enough paper and ink have been spilled in this case without this Court going into further explanation. After careful consideration of the arguments and case history, the Motion for Sanctions is denied.

7

### B. Motion to Dismiss (2017 Case)

When ruling on a motion under Federal Civil Rule 12(b)(6), this Court must accept all well-pled factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 566–67 (6th Cir. 2013). Although a complaint need not contain "detailed factual allegations," it must have more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint will survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Ordinarily, this Court may not consider evidence outside the complaint when deciding a motion to dismiss. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). But "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). *See also Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008). In deciding the Motion to Dismiss, this Court considered the exhibits attached to the Amended Complaint and the Sixth Circuit's opinions in *Marck I* and *Marck II*. All are referred to in the Amended Complaint and are central to Marck's claim.

Defendants first argue that the Amended Complaint should be dismissed because Marck's claim is time barred by the statute of limitations. Generally, a motion to dismiss is an "inappropriate vehicle" for dismissing a claim on statute of limitations grounds. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). But dismissal is appropriate if "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* "'Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run,' and 'if the defendant meets this requirement[,] then the burden shifts to the plaintiff to establish an exception to the statute of limitations.'" *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013) (citation and alteration omitted).

Because this is a diversity case, this Court must "apply the substantive law of the forum state, Ohio, in accordance with the controlling decisions of its highest court." *Id.* If the Ohio Supreme Court has not yet addressed the issue at hand, this Court "'must predict how the court would rule by looking to all the available data,' including intermediate appellate decisions." *Id.* (citation omitted).

The parties dispute which statute of limitations applies in this case. Defendants contend Ohio's six year statute of limitations for oral contracts applies because Marck's claim arises from the parties' October 2005 settlement agreement, which was never reduced to writing (Doc. 9 at 3–4, 11). Marck counters that the longer statute of limitations for written contracts applies because: (1) the basic terms of the October 2005 settlement agreement were "entered into the record and transcript"; or (2) this claim was brought under the January 2013 settlement agreement, a "separate written contract" in which "the parties specifically agreed and contracted to exempt and preserve the claims raised in this lawsuit from the underlying settlement" (Doc. 14 at 9–10).

9

First, it is clear from the Amended Complaint that Marck's breach of contract claim arises out of the 2005 settlement agreement. The Amended Complaint only refers to the 2013 agreement in passing and does not seek relief for any breach or failure to comply with that agreement. And Marck explicitly asks this Court to "find[] that the Peng Defendants [b]reached the settlement, settlement agreement and Settlement Framework terms of October 19, 2005" (Doc. 4 at 14).

To the extent Marck argues that the 2013 agreement creates a *new* right to relief for Defendants' alleged breach of the 2005 agreement, this assertion is not reflected in the Amended Complaint and is unsupported by the language of the 2013 agreement. The Amended Complaint alleges only that the 2013 agreement was entered and that Defendants appealed the enforceability of the agreement -- it does not reference any of its substantive terms (*id.* at ¶¶ 68–69, 72). The provision that Marck relies on provides: "Notwithstanding any term or provision herein, any claim, right or entitlement of any party seeking reimbursement of attorneys' fees or related expenses incurred by any party after the Effective Date is not released, acquitted or discharged" (Doc. 8-5 at 4). But merely exempting existing claims from the mutual release does not create a new right to assert those claims. And the provision does not waive, toll, or in any way reference the statute of limitations for those claims. *See Vitek v. AIG Life Brokerage*, 2008 WL 4372670, at *5 (S.D. Ohio 2008) ("'A waiver is an intentional relinquishment of a known right.' The Court has reviewed the letter . . . and finds nothing in its contents that suggest it constituted an intentional relinquishment of Defendants' statute of limitations defense.") (quoting *State v. Blackburn*, 118 Ohio St. 3d 163, 166 (Ohio 2008)).

Second, the 2005 agreement was clearly an oral agreement. Marck provides no authority in support of its argument that reciting the basic terms of the agreement into the record was enough to convert it into a written contract. And this Court finds none. As the Sixth Circuit observed, [i]n

10

October 2005, the parties reached an *oral* contract." *Mark II*, 465 F. App'x at 516 (emphasis added). *See also Smith v. ABN AMRO Mortg. Grp. Inc.*, Inc, 434 F. App'x 454, 460–61 (6th Cir. 2011) (stating the parties "reached an oral settlement agreement" even though the basic terms of the parties' settlement agreement was recited into the record); *Selvage v. Emnett*, 181 Ohio App. 3d 371, 374–76 (Ohio Ct. App. 2009) (same).

Because Marck's claim arises out of an oral contract, Ohio Revised Code § 2305.07 provides the applicable statute of limitations: "[A]n action upon a contract not in writing . . . shall be brought within six years after the cause thereof accrued." A breach of contract cause of action accrues when the alleged breach occurs or when the complaining party suffers actual damages as a result of the breach. *Lutz*, 717 F.3d at 473. *See also Aluminum Line Prods. Co. v. Brad Smith Roofing Co.*, 109 Ohio App. 3d 246, 258 (Ohio App. 1996) ("The cause of action arises when the plaintiff discovers the failure to perform as agreed in the oral contract.").

The Amended Complaint (Doc. 4) alleges the following facts:

- On November 16, 2005, Defendants told their counsel they were "repudiating and rejecting the agreed to" settlement terms (¶ 21).

- On November 16 and 17, 2005, Defendants' counsel told Marck's counsel they "were breaching and otherwise had repudiated and rejected the settlement" (¶¶ 24–25).

- On November 22, 2005, Marck filed a motion to enforce the settlement "[a]fter being informed that the Peng Defendants had repudiated [the] settlement" (¶ 27).

- "By an email dated January 23, 2006," Defendants' counsel "confirmed there would be no settlement on the terms reached on October 19, 2005" (¶ 36).

- On January 23, 2006, Marck moved to reopen the case due to Defendants' "ongoing rejection and repudiation of [the] settlement" (¶ 38).

Viewing the Amended Complaint in the light most favorable to Marck, it is clear that Marck's breach of contract claim accrued no later than January 23, 2006 -- over eleven years before this action was filed. It is also clear that Marck alleges Defendants *repudiated* the agreement. Importantly, "a cause of action for repudiation accrues only once—at the time of repudiation." *Lutz*, 717 F.3d at 473. Thus, on the face of the Amended Complaint, Marck's breach of contract claim is time barred unless the Amended Complaint indicates a basis for a lengthy tolling of the statute of limitations.

Marck argues the statute of limitations either did not run or was tolled between the district court's January 2006 Order reopening the case and the Sixth Circuit's March 2012 decision (*Marck II*) ordering the district court to enforce the settlement agreement (Doc. 14 at 8). During this period, Marck contends "there was no settlement and related damages for breach" because the January 2006 Order reopening the case "superseded" or "destroyed" the settlement, "rendering [it] a nullity" (*id.*) (citation omitted). Marck speculates that if it had attempted to file this claim "any time" before March 2012, Defendants would have moved to dismiss the claim, arguing it was "not ripe" (*id.*).

Marck provides no legal basis for tolling the statute of limitations during this period, other than its argument that equitable tolling applies. "[T]he general rule in Ohio is that the pendency of an appeal does not toll the relevant limitations period." *Esselburne v. Ohio Dep't of Agric.*, 64 Ohio App. 3d 578, 581–82 (Ohio Ct. App. 1990) (citing cases). *See also Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St. 3d 54, 58–59 (Ohio 1989). Ohio courts have also found that the statute of limitations for a breach of contract claim is not tolled simply because the plaintiff "ch[ose] to seek redress by filing a motion to enforce the terms of a settlement agreement rather than an independent action sounding in breach of contract." *Castle King LLC v. Att'y Gen. of Ohio*, 2011 WL 1137299,

at *3 (Ohio App. Ct. 2011). Together, these propositions indicate that under Ohio law, the statute of limitations would have continued to run despite the parties' ongoing dispute.

Further, even if reopening the case did toll the statute of limitations, it does not follow that the clock was paused for the entire period between January 2006 and March 2012. Marck's argument does not account for the fact that the Sixth Circuit "vacate[d] the reopening of the case and all judgments dependent on that reopening" in February 2009. *Marck I*, 309 F. App'x at 935. Thus, by the same logic, the dismissal order and settlement agreement were again in place between February 2009 and October 2009, when the district court set aside the settlement agreement. This is consistent with the Sixth Circuit's analysis of the injunction "clock" in *Marck III*, No. 13-3015, at 2–3 (6th Cir. Sept. 3, 2013). Thus, the statute of limitations would have continued to run during the eight months between *Marck I* and the district court's October 2009 Order, and Marck's claim would still be time barred.

That leaves Marck's argument that equitable tolling saves its claim because "[i]t would be inequitable to require Marck to file a lawsuit flowing from the breach of a settlement that simply did not exist and could not be enforced as a matter of law between January 23, 2006 and March 6, 2012 – more than 6 years" (Doc. 14 at 11). Marck believes federal law controls this issue, but Marck's only claim arises under state law. Thus, state law also governs the analysis. *Weikle v. Skorepa*, 69 F. App'x 684, 687 (6th Cir. 2003).

Under Ohio law, "equitable tolling is to be applied sparingly and only in exceptional circumstances." *McCualsky v. Appalachian Behavioral Healthcare*, ___ N.E.3d___, 2017 WL 6016632, at *4 (Ohio App Ct. 2017). A litigant seeking equitable tolling "must demonstrate that he or she diligently pursued his or her rights, but some extraordinary circumstance stood in his or her

13

way and prevented timely action." *Id*. "Ohio courts have rarely invoked the doctrine of equitable tolling," which generally requires the presence of fraud. *Weikle*, 69 F. App'x at 687–88. *See also Coleman v. Columbus State Cmty. Coll.*, 49 N.E.3d 832, 838–39 (Ohio App. Ct. 2015) (citing cases).

First, the Amended Complaint does not support Marck's assertion that it "acted diligently in filing this Complaint" (Doc. 14 at 11). This action was not filed for almost twelve years after Marck first became aware of Defendants' alleged breach of the settlement agreement (Doc. 4 at ¶¶ 24–27, 36), almost ten years after Defendants challenged the Order reopening the case (*id.* at ¶¶ 45–46), almost seven years after Defendants challenged the Order setting aside the settlement agreement (*id.* at ¶¶ 62–63), almost six years after the Sixth Circuit ordered the settlement agreement to be enforced (*id.* at ¶ 66), and almost five years after the 2013 settlement agreement was entered (*id.* at ¶¶ 68–69).

Second, the circumstances do not indicate Marck was unable to timely file its claim due to "extraordinary circumstances" beyond its control, rather than its own strategic choices. Marck could have timely filed this claim when it first became aware of Defendants' alleged breach. But Marck decided to try to enforce the agreement, and eventually to reopen the case, rather than file a separate breach of contract claim. Ohio courts have declined to extend the doctrine of equitable tolling to circumstances like this, where the litigant could have filed its claim in a timely manner if not for its own decisions or errors. *See, e.g.*, *Weikle*, 69 F. App'x at 688 ("[A] plaintiff's presence in some court is not enough to provide safety from the statute of limitations. It is also necessary to be diligent in pursuing one's rights by maintaining an awareness of the applicable rules that might otherwise bar one's suit."); *id.* at 689 ("Weikle argues that he 'should not have been expected to bring an appeal in this action while at the same time filing an identical action in state court. Such a result would be a tremendous waste of judicial resources and unnecessarily expensive to Weikle.' Being diligent,

however, inevitably creates expense for the plaintiff."); *Castle King*, 2011 WL 1137299, at *3 ("While a party may opt to proceed in a certain fashion, it does not necessarily follow that a statute of limitations will be tolled while one option is pursued over the other.").

Finally, although Marck asserts that it was legally barred from filing this claim between January 2006 and March 2012, this Court sees no reason why Marck could not file a complaint to preserve its claim and simply stay the action pending the outcome of the initial lawsuit. And Marck provides none, other than its speculation that Defendants' would have attempted to dismiss the claim as unripe. While construing the Amended Complaint and attachments in Marck's favor, nothing suggests, let alone establishes, there are extraordinary circumstances warranting equitable tolling.

Defendants also argue Marck's claim should be dismissed because it is barred by res judicata or because it fails to state a claim. Because the parties litigated and relitigated the alleged breach before this Court and others on numerous occasions, Defendants' res judicata argument is certainly appealing at first glance. But revisiting these arguments yet again is unnecessary. Because this Court finds Marck's claims are time barred, this Court declines to address these alternative theories. And because Marck's claims are barred as a matter of law, Marck's request to further amend the Complaint is denied. Any amendment is pointless.

## CONCLUSION

One final point. The 2017 case was filed while the Motion for Sanctions in the 2005 case was pending. It was done without any advance notice to either this Court or counsel -- despite the ongoing discussions about the pending Motion for Sanctions, and despite this Court's well-known and oft expressed expectations about attorney communications. Why the surprise -- to what advantage? This

Court finds no good reason.  Surely the time has come -- and gone -- to put this case to rest.  Enough already.

Marck's Motion for Sanctions (2005 case, Doc. 531) is denied, and Defendants' Motion to Dismiss (2017 case, Doc. 9) is granted.  The 2017 case is dismissed with prejudice.

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                                    JACK ZOUHARY
                                                    U. S. DISTRICT JUDGE

March 29, 2018